# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-0298(E)

MATTHEW SHEALEY, JR., APPELLANT,

V.

PETER O'ROURKE,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

MEGHAN GENTILE AND HAROLD H. HOFFMAN, INTERVENORS.

Before PIETSCH, BARTLEY, and ALLEN, *Judges.*

## O R D E R

Before the Court is an application pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA) for an award of attorney fees and expenses in the amount of $4,061.60 filed by intervenors Meghan Gentile, Esq., and Harold H. Hoffman, Esq., former counsel for the appellant Matthew Shealey, Jr. The appellant opposes the EAJA application pro se. For the reasons discussed below, the Court will dismiss the EAJA application because the intervenors lack standing to pursue it.

## I. RELEVANT PROCEDURAL HISTORY

In January 2017, the appellant appealed to this Court a December 20, 2016, Board of Veterans' Appeals (Board) decision that denied reconsideration of a July 1, 2015, Board decision that found that the character of his discharge from service is a bar to entitlement to VA benefits. The intervenors filed their notices of appearance on behalf of the appellant on February 13, 2017. They drafted various documents in preparation for a pre-briefing conference that was held on May 17, 2017, pursuant to Rule 33 of the Court's Rules of Practice and Procedure. They also participated in the Rule 33 conference.

On June 15, 2017, the intervenors moved to withdraw from representation. The Court granted that motion on June 23, 2017. The same day, the appellant obtained new counsel who appeared in this matter. On August 10, 2017, the parties filed a joint motion for remand (JMR), which this Court granted on August 21, 2017. On September 6, 2017, the appellant's second counsel withdrew from representation.

On September 19, 2017, the intervenors filed the pending EAJA application in the appellant's name. There is no indication in the record that the intervenors communicated with the appellant before filing their application; however, the intervenors filed for EAJA fees based on the parties' representation agreement. The Secretary did not contest the EAJA application but the pro se appellant opposed the EAJA application in three separate filings on October 3, November 8, and November 13, 2017.

Given the appellant's objections, on December 19, 2017, the Court ordered the intervenors to show cause why the EAJA application should not be dismissed. They responded on January 18, 2018, urging the Court to not dismiss the EAJA application. The appellant replied on February 13, 2018, again objecting to the EAJA application.[1]

On March 26, 2018, the intervenors filed a motion for permission to intervene in the matter under this Court's Rule 15. The Secretary took no position on the motion. The appellant opposed intervention. On April 12, 2018, the Court granted the intervenors' request to intervene, explaining its reasoning in a separate order. The matter is ripe for resolution.

## II. DISCUSSION

To establish eligibility for an EAJA award, an appellant's application must be filed within 30 days after final judgment in the action and contain (1) a showing that the appellant is a prevailing party, (2) an assertion that the appellant's net worth does not exceed $2,000,000, (3) an allegation that the Secretary's position was not substantially justified, and (4) an itemized statement of the fees and expenses sought. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Scarborough v. Principi*, 541 U.S. 401, 407-09 (2004); *Owens v. Brown*, 10 Vet.App. 65, 66 (1997). These formal requirements are all met here. But there is more to the story.

Critically important—indeed dispositive—for the resolution of this matter, EAJA fees are payable to and the property of the veteran, not a veteran's attorneys. *See Astrue v. Ratliff*, 560 U.S. 586, 593 (2010); *Carpenter v. Principi*, 15 Vet.App. 64, 75 (2001) ("EAJA awards belong to the claimant, not his or her attorney."). As such, attorneys do not have independent standing even to apply for EAJA fees. *See, e.g.*, *Oguachuba v. I.N.S.*, 706 F.2d 93, 97-98 (2d Cir. 1983).

Despite the clarity of the Supreme Court's holding in *Ratliff* that EAJA fees are the property of the client, the intervenors maintain that the Court should grant their application despite their former client's clear objections. The intervenors argue that they are entitled to claim EAJA fees for their work in representing the appellant because (1) the fee agreement he signed authorized them to claim fees and his signature on the contract reflected his consent to the application; (2) the appellant would be unjustly enriched if the Court denies an EAJA award; and (3) policy concerns necessitate a ruling in their favor. *See generally* Intervenors' December 19, 2017, Response (Intervenors' Resp.). The Court rejects each argument.

The signed fee agreement (Agreement) between the appellant and the intervenors (through their law firm, Veterans Legal Advocacy Group (VetLAG)) states, in relevant part:

> I understand VetLAG will not charge a fee to represent me in my case. However, I agree that VetLAG may apply for attorney's fees and litigation expenses with respect to my case under the applicable provisions of the Equal Access to Justice Act (EAJA). I agree that if the Court grants attorney's fees, VetLAG may keep the

---

[1] The Court submitted this matter to a panel for decision on February 22, 2018, staying proceedings for 30 days to permit possible arrangements for the appellant's representation. The appellant did not obtain representation and he continues in a self-represented capacity.

full amount of the award. I also agree to provide any assistance or information the attorneys of VetLAG may need to prepare their request for attorney's fees. . . . I understand that VetLAG's representation relies on my continued cooperation. If I do not abide by the terms of this agreement, then VetLAG may withdraw from its representation. . . . I agree that VetLAG is entitled to a share of EAJA fees, based on billable hours, for work completed on behalf of my claim(s), if VetLAG's withdrawal is due to my willful misconduct or failure to comply with the terms of this agreement.

*See* Meghan Gentile's Feb. 13, 2017, Notice of Appearance at 2.

The intervenors argue that the appellant's objections to the EAJA application are an attempt "to circumvent his obligations under the Agreement" and his "subsequent opposition to [the EAJA application] represent[s] willful misconduct and failure to comply with the terms of the Agreement." Intervenors' Resp. at 4. They contend that the Agreement allows them to seek fees and "recognizes [their] ability to collect fees even after withdrawal of representation."[2] *Id.* Essentially, they interpret the fee agreement to represent the appellant's consent to the EAJA application, making his present objections meritless.

The intervenors may very well be correct that the Agreement represents the appellant's explicit or implied consent for their seeking of EAJA fees. They may also be correct that his objection to the EAJA application is "willful misconduct and failure to comply with the terms of the Agreement." *Id.* In other words, they may be correct that the appellant is in breach of contract.[3] It may also be that the appellant will be unjustly enriched if we do not grant the application. *Id.* On the intervenors' view of the facts, the law should preclude such a result.

The problem with the intervenors' arguments, however, is that the proper remedy for such claims is a common-law breach of contract or unjust enrichment action, causes of action over which this Court lacks jurisdiction. *See In re Fee Agreement of Cox (In re Cox)*, 10 Vet.App. 361, 376 (1997), *vacated on other grounds, Cox v. West*, 149 F.3d 1360 (Fed. Cir. 1998). The Court's jurisdiction is predicated on a Board decision. 38 U.S.C. § 7252. As part of that review, we may also adjudicate applications under the EAJA. 28 U.S.C. § 2412(d)(1)(A), (2)(F). But that is not what intervenors call on us to do. Their asserted right to payment arises not from the EAJA, but

---

[2] The intervenors are correct about one point. The law is clear that, if the EAJA requirements are otherwise satisfied, counsel who have been discharged before resolution of a case may still receive a fee. *See, e.g.*, *Bowling v. Principi*, 15 Vet.App. 379, 386 (2002). This legal principle does not assist the intervenors, however, because it does not mean that former counsel may obtain a fee under the EAJA over their former client's objection. The intervenors consistently miss the importance of that fact. For example, when attempting to explain why the principle from *Ratliff* is not fatal to their claim, the intervenors note that the "only difference" between this situation and any other situation under the EAJA is that their former client "complained to the Court about [the application]." Intervenors' Resp. at 6. That "difference" is dispositive because the EAJA fee belongs to the client. *Ratliff*, 560 U.S. at 593.

[3] The intervenors do not appear to argue that the appellant assigned them the EAJA fees at issue.

rather from their fee agreement with the appellant.[4] The intervenors are free to pursue any common-law claims they may have in an appropriate forum. This Court is not that forum.[5]

The intervenors seek to avoid the clear legal answer here by turning to policy considerations. Specifically, they argue that the appellant "would be financially disadvantaged by becoming personally liable for the damages caused by his breach" if we were to dismiss the Application.[6] Intervenors' Resp. at 8-9. They cite *Molden v. Peake*, 22 Vet.App. 177, 181 (2008), and *Martins v. Principi*, 19 Vet.App. 20, 23 (2005), as examples of situations in which the Court has suspended certain requirements or overlooked defective EAJA applications where a veteran would be financially harmed otherwise. Intervenors' Resp. at 9.

Their argument misses the fundamental nature of EAJA fees. The simple fact is that EAJA fees belong to litigants, not their attorneys. *Ratliff*, 560 U.S. at 593. The Sixth Circuit aptly explained this concept in *Bryant v. Commissioner of Social Security*: "Nothing in the EAJA suggests that all persons performing services for the 'prevailing party' may separately assert claims for compensation from the Government. Rather, Congress appears to have intended that these persons—including the party's attorney—receive their compensation from the party who utilizes their services." 578 F.3d 443, 448 (6th Cir. 2009). The *Bryant* court also noted that acts of Congress other than the EAJA explicitly provide for the direct payment of attorneys' fees to a litigant's attorney rather than the litigant, concluding that "[i]f Congress had intended for EAJA fees to be awarded to the party's attorney it could have explicitly done so." *Id.*

While it is true that the appellant may be financially disadvantaged by having to litigate a breach of contract or unjust enrichment claim, he has affirmatively and clearly decided to prevent the awarding of attorneys' fees, which is his right to do.

No policy concerns can override a veteran's clear right to refuse to apply for EAJA fees. Indeed, as the Supreme Court stated in *Ratliff*, "[t]he fact that the [EAJA] statute awards to the prevailing party fees in which her attorney may have a beneficial interest or a contractual right does not establish that the statute 'awards' the fees directly to the attorney. [In fact], the statute's

---

[4] This is not to say that the Court has no jurisdiction to consider a fee agreement. We do, but that authority is limited. This Court only has the authority to interpret fee agreements so that we may police fees that are "excessive or unreasonable." 38 U.S.C. § 7263(d). We lack the power to enforce or even invalidate fee agreements. *See In re Cox*, 10 Vet.App. at 376 (noting that, if Congress intended for the Court to have such authority, the Court "appears to lack the means to effectuate such contrary intent"); *see also In the Matter of Fee Agreement of Wick*, 40 F.3d 367, 370-73 (Fed. Cir. 1994).

[5] Indeed, we lack the *means* to hear such a claim. *See In re Cox*, 10 Vet.App. at 376. For example, under the Constitution, both the appellant and intervenors would be entitled to a trial by jury, U.S. CONST. AMEND. VII, and the appellant would have the right to raise counterclaims, *see, e.g.,* FED. R. CIV. P. 13. This Court cannot provide such protections and procedures.

[6] The intervenors also argue that their firm should be awarded the fees because they are "a rare . . . nonprofit law firm" that "represents its clients on remanded or reversed claims for free[.]" Intervenors' Resp. at 9. They contend that if the Court were to dismiss the EAJA application, "EAJA would become meaningless and increasing numbers of veterans would be unrepresented at this Court." *Id.* at 10. The intervenors' nonprofit status is irrelevant. *See Froio v. McDonald*, 27 Vet.App. 352, 360 (2015) ("It is the client's financial status that is relevant, not the attorney's. Nothing in the EAJA statute . . . suggests that a prevailing party's entitlement to an award of attorneys fees and expenses is contingent upon the identity or need of the party's attorney." (internal citation omitted)).

4

plain text does the opposite[.]" 560 U.S. at 593. Here, the appellant has objected to the intervenors' applications for EAJA fees and because the intervenors have no standing to seek fees under EAJA in the face of the appellant's objections, that is the end of the matter.

### III. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the September 19, 2017, EAJA application is DISMISSED.

DATED: June 19, 2018                                              PER CURIAM.